J. C. BOLES, v. STATE OF FLORIDA

27 So. (2nd) 293　　　　　　　　　　　　　　　　June Term, 1946
July 23, 1946　　　　　　　　　　　　　　　　　　　　Division A
Rehearing denied September 18, 1946

*Wallace F. Perry,* for appellant.

*J. Tom Watson,* Attorney General, *Reeves Bowen* and *Shannon Linning,* Assistant Attorneys General, for appellee.

TERRELL, J.:

J. C. Boles was tried and convicted on an information charging that he did make a lewd and lascivious assault on a child twelve years of age. He was sentenced to serve two and one-half years in the state penitentiary at hard labor and prosecuted this appeal from that judgment.

The information was exhibited under Section 800.04, Florida Statutes, 1941, which is as follows:

"Any person who shall handle, fondle or make an assault upon any child under the age of fourteen years in a lewd, lascivious or indecent maner, or who shall knowingly commit any lewd or lascivious act in the presence of such child, without intent to commit rape upon such child, shall be deemed guilty of a felony and punished by imprisonment in the state prison or county jail for not more than ten years."

In fine, the statute condemns an assault on or an act committed in the presence of a child under fourteen years of age in a lewd, lascivious, or indecent manner, without intent to commit rape. The assault or the act is constituted a felony, and the maximum penalty is ten years in the county jail or the state prison. "Lewd," lascivious," and "indecent" are synonyms and connote wicked, lustful, unchaste, licentious, or sensual design on the part of the perpetrator.

Let us look at the picture presented by the evidence and see if it reveals a lustful or sensual purpose on the part of appellant. He was a man forty-seven years of age and was operating a shoe repair shop at Opa Locka, a suburb of Miami, Florida. He had seven children, all of whom were grown but two, and they were infants. His shoe repair shop was on a public thoroughfare, frequented by the general public; it had

a counter and other accessories common to a place of that kind. It appears to have been a popular trysting place for children. They played in and about the shop, and he often had to drive them from behind the counter because of their getting in danger of the repair machines.

The prosecuting witness was twelve years old and went to Boles' shoe shop about the time alleged to get a pair of shoes repaired. She says she placed the shoes on the counter, that Boles was behind the counter, that he put his arms around her, with his right hand on her right breast and his left hand on her left breast, and told her she was his little sweetie, as if she were his daughter. Boles denied this and testified that he remembered that at one time she came in his shop to get some repair work done and came behind his counter and that he put his hand on her shoulder and told her she must keep from behind the counter because the machines were dangerous.

There was no other direct testimony, but four other children, about the age of the prosecutrix, who heard her testimony (though the rules as to witnesses was timely invoked), were brought up and permitted to testify to instances in which they had been to Boles' shoe shop when he had placed his arms around them or on their shoulders and spoke to them in similar tones. All of this testimony was let in for the purpose of impeaching Boles' direct testimony and for no other purpose. The jury returned a verdict of guilty with recommendation for clemency.

We find nothing whatever lewd, lascivious, or indecent in appellant's conduct toward the prosecuting witness. He was of the type that adores children, and the record reveals nothing to support the charge. It is perfectly apparent that he was a favorite with the children of the community; he treated them in a kindly manner, was solicitous about them, and did them personal favors constantly. He was a man well into middle life, had raised a large family, was industrious, and, so far as the evidence shows, had no criminal record. The evidence of the prosecutrix shows that his approach to her was fatherly rather than lewd or lascivious.

This conclusion is buttressed by the fact that every element of the transaction took place during office hours in one

of the most public places in town, where all ages come and go, where children romp and play, and where they are treated in a considerate manner, are looked after as if they were his, and are given toys and other trinkets to play with. Those desiring to engage in lewd and lustful conduct do not resort to public places in the daytime and ring the bell.

There must be a definite showing of a lewd or lascivious interest to warrant the punishment imposed. It may be imputed from the circumstances but not when they all point to the contrary. The jury evidently had doubt as to this, since they recommended mercy. The recommendation had no effect in law, though it doubtless influenced the degree of the judgment.

We are also of the view that it was error to permit evidence to impeach the testimony of appellant. It amounted to nothing more than a recital of so many episodes of similar character which were irrelevant or collateral and, under the circumstances here, were highly prejudicial. Myers v. State, 43 Fla. 500, 31 So. 275; Fields v. State, 46 Fla. 84, 35 So. 185; Starke v. State, 49 Fla. 41, 37 So. 850; Patterson v. State, decided March 19, 1946, not yet reported.

A two and one-half year sentence to hard labor in the state prison is a serious imposition, and it should be supported by something more than a letch for attributing sensual motives to impulses that are as common to the social agenda as Hoyt's German was in the old day. We find nothing more conclusive on which to rest this conviction.

The judgment is accordingly reversed and a new trial awarded.

Reversed.

CHAPMAN, C. J., BUFORD and ADAMS, JJ., concur.